TEXAS & P. RY. CO. et al. v. THOMPSON.

(Circuit Court of Appeals, Fifth Circuit. March 13, 1923.)

No. 3935.

1. **Carriers ⚍32(2)—Allowance of switching charge to shipper, who did switching over another railroad, is legitimate.**

An allowance by a railway company to a shipper of a switching charge for switching done by the shipper, which barely covered the cost of the service rendered, was legitimate and proper, and the fact that the shipper, in rendering such service, used the track of another railroad company, which he had acquired the right to use instead of building a spur track of his own, does not affect the legitimacy of the charge.

2. **Carriers ⚍196½—Receivers, attacking allowance| because not filed with Interstate Commerce Commission, must prove commerce was interstate.**

Where receivers of a railway company opposed an allowance to a shipper of switching charges for switching done by him as agreed to by the carrier, on the ground that no tariff covering the same had been filed with the Interstate Commerce Commission, the burden is on the receivers to show that the traffic with respect to which the charge was claimed was interstate commerce.

3. **Carriers ⚍32(1)—Reasonable allowance for switching charges for intrastate shipments held valid.**

Since there is no requirement in the Constitution or laws of Louisiana that an agreement for allowance of switching charges to a shipper must be filed with the state Public Service Commission, a reasonable allowance for such services under an agreement by the carrier is proper, and can be enforced against the receivers of the carrier, where there was no proof that any of the business for which the allowance was claimed was interstate in character, and there was proof that substantially all of the shipper's business was intrastate.

Appeal from the District Court of the United States for the Western District of Louisiana; Rufus E. Foster, Judge.

Petition in intervention by J. W. Thompson in receivership proceedings against the Texas & Pacific Railway Company, in which J. L. Lancaster and others were appointed receivers. Judgment for the intervener, and the Railway Company and its receivers appeal. Affirmed.

Esmond Phelps, of New Orleans, La. (Spencer, Gidiere, Phelps & Dunbar, of New Orleans, La., on the brief), for appellants.

Purnell M. Milner, of New Orleans, La., for appellee.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. J. W. Thompson (called herein intervener), having lost by reason of floods in the Mississippi river his gravel plant at Arbroth, La., from which he had been furnishing gravel to the Texas & Pacific Railway Company, in 1914 was negotiating with

⚍For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the New Orleans, Texas & Mexico Railway Company for a new site for such plant and a gravel supply at Anchorage, in said state, with trackage rights to reach the Texas & Pacific Railway connection. · Ascertaining that he could obtain said facilities, intervener, after ·inspection of the locality by E. F. Kearney, vice president of said Texas & Pacific Railway Company, entered into an agreement with him that, if intervener would arrange for the use by himself of the tracks of the New Orleans, Texas & Mexico Railway, and would with intervener's locomotive switch all cars to be moved over the Texas & Pacific Railway from his proposed plant to the line of said last-named railway, and thus obviate the necessity of said railway building a spur track to intervener's plant, said railway company would pay intervener $2 per car to cover such switching and trackage charges. · Solely and entirely on the faith of this agreement, intervener acquired said facilities on a 15-year lease, built his plant at a large expense, and arranged with said New Orleans, Texas & Mexico Railway for the right to use its track for switching with intervener's engine his cars to said Texas & Pacific Railway.

The cars were delivered by the intervener from August 8, 1914, to October 27, 1916, on which last date receivers were appointed for said Texas & Pacific Railway Company by the United States District Court for the Western District of Louisiana, and bills were rendered to said railway company for said switching charges amounting to $13,-086, but have not been paid. Intervener, by leave of the court, has filed in said receivership case his intervention, seeking a judgment in his favor for said claims. He has also filed therein a separate intervention, claiming from the receivers for switching charges since their appointment the sum of $3,072.

The evidence showed the making of the agreement with Kearney as stated, and the performance of the switching service as specified in the exhibits to the interventions. It showed that intervener had contracted with the New Orleans, Texas & Mexico Railway Company for the use of its track for the greater part of the distance from intervener's plant to the Texas & Pacific Railway at intervener's expense, for which he paid 25 cents per car; that intervener performed the service of switching said cars at an expense to it of $1.98 per car; that on certain occasions, when his engine was out of order and he procured the New Orleans, Texas & Mexico Railway Company to perform such switching service, he paid therefor $2.50 a car. It was also proven that under the usual practice of railways the Texas & Pacific Railway Company would have built a spur track to intervener's plant, and would have itself performed without extra charge the switching of intervener's cars to the Texas & Pacific Railway. It appeared that there had been some discussion between officers of the Texas & Pacific Railway Company as to the legality of this agreement with intervener, and that the bills rendered had not been paid; but no cancellation of said contract was shown until after the receivers were appointed, when shortly thereafter they notified intervener that they canceled his contract. Switching charges amounting to $232 had been

earned by intervener between the date of the receivers' appointment and the date of such cancellation.

Said receivers resisted said intervention upon the ground that the original agreement was illegal, in that so far as it represented interstate movement of cars no tariff showing such allowance had been filed with the Interstate Commerce Commission, and so far as the same represented intrastate business no tariff had been filed with the Louisiana Public Service Commission, or any allowance of such switching charge otherwise made by it; also that the movement of cars, being over a part of the main line of the New Orleans, Texas & Mexico Railway Company, although moved by intervener with his own engines and at his own expense, was not a proper switching service.

The District Court held that intervener was entitled to judgment against the Texas & Pacific Railway Company for its bill for switching charges up to the date of the appointment of receivers, and that the receivers were liable to intervener for the sum of $232, the amount of such switching charges accrued from the date of their appointment to the date of the cancellation of said contract. He also held that there was no evidence in the record sufficient to show that any part of said business for which said switching charges were made was interstate business; that the proof showed in all probability that it was solely intrastate business.

[1] 1. It is not disputed that if the intervener had himself built a spur track, because of this arrangement with Kearney, from his plant to the Texas & Pacific Railway, and had delivered his cars from his plant to said railway, the allowance of a switching charge would have been legitimate and proper. United States v. Balt. & Ohio Railroad Co., 231 U. S. 274, 293, 34 Sup. Ct. 75, 58 L. Ed. 218; Mitchell Coal Co. v. Penn. Railroad, 230 U. S. 247, 33 Sup. Ct. 916, 57 L. Ed. 1472. It is perfectly evident under the evidence that the rate allowed was not only reasonable, but barely covered the cost of the service rendered.

We cannot see where the fact that, instead of building his own spur track, the intervener acquired the right to use in place thereof and for the same purpose the track of a railroad company, constitutes the service other than a service received by the carrier from an owner of the property transported, and his payment of this switching charge as anything but compensation of his hiring of the instrumentality itself, instead of himself owning it. United States v. Balt. & Ohio Railroad Co., 231 U. S. 274, 293, 34 Sup. Ct. 75, 58 L. Ed. 218.

[2] 2. The defendants in the intervention claiming that the allowance was illegal, because it related to interstate commerce and that it was not shown that a tariff covering the same had been filed with the Interstate Commerce Commission, the burden was upon them to show that the service rendered related to interstate commerce. So far from this being the case, the proof was practically without contradiction that the business was solely intrastate. It was testified that intervener shipped practically all of his gravel to the western part of Louisiana, except that which he shipped to New Orleans; that he had never to any considerable extent done an interstate business; that

the entire interstate business would not amount to as much as 1 per cent. There was no proof of any part of the business done with the Texas & Pacific Railway Company and its receivers being of an interstate character.

[3] We do not find any provision in the Constitution or laws of Louisiana which requires the filing with or allowance by the Louisiana Public Service Commission or its predecessor, the Railroad Commission, of an agreement such as is testified to in this case, or of a tariff showing such an agreement for payment of switching charges, and the testimony in the case clearly showing that the allowance made was reasonable, the absence of such filing with said Commission, or of affirmative allowance by it, does not invalidate the agreement.

3. No question is raised as to the liability of the receivers for the amount of the switching charges earned up to the date of their cancellation of said contract, provided the contract is held to be legal and binding upon the railway company, and there is no dispute as to the amounts.

The judgment of the District Court is affirmed.